STATE OF NORTH CAROLINA v. BOBBY EARL DANIELS

No. 777SC638

(Filed 17 January 1978)

1. Criminal Law § 66.11— confrontation at crime scene—in-court identification
   not tainted
       The trial court properly concluded that an in-court identification of de-
   fendant by an armed robbery victim was not tainted by a pretrial identifica-
   tion procedure in which defendant was shown singly to the victim where the
   evidence tended to show that the robbery took place in a well lit store; the vic-
   tim was as close as five or six feet from defendant; defendant was in the store
   for eight to twelve minutes; the victim was positive in his identification of
   defendant as the robber because of defendant's irregular teeth and gold ear-

bob; and only three hours elapsed between the time of the robbery and the identification procedure.

**2. Criminal Law § 73— hearsay testimony— admissibility**

The trial court did not err in admitting corroborative hearsay evidence of a deputy sheriff concerning an armed robbery victim's description of the robber since there was evidence from which it could be inferred that the deputy talked to the victim.

**3. Criminal Law § 86.3— cross-examination of defendant— prior offenses— no bad faith of prosecutor**

Where the prosecutor cross-examined defendant with respect to past criminal acts, defendant stated that he had never been convicted of any criminal offense other than traffic offenses, the prosecutor asked if defendant had escaped from prison on a named date, and defendant's objection was sustained, defendant failed to show that he was prejudiced since he showed no bad faith on the part of the prosecutor.

APPEAL by defendant from *Donald Smith, Judge*. Judgment entered 16 March 1977, in Superior Court, WILSON County. Heard in the Court of Appeals 6 December 1977.

Defendant was charged in a proper bill of indictment with armed robbery, to which charge he entered a plea of not guilty. At trial the State put on evidence tending to show that on 15 December 1976 defendant entered a grocery store in Stantonsburg, drew a pistol on Carl Boswell, the operator of the store, and demanded all the money in the cash drawer. After giving defendant all the currency in the drawer Boswell managed to flee from the store. Boswell then observed the defendant leave the store, run down the road to Saratoga and then into the woods.

Boswell talked to several Wilson County deputies about defendant's description. He described the robber as a black male who was wearing a blue tam and a yellow coat. The main feature that Boswell remembered was the man's irregular teeth. Testimony by Boswell indicated that when defendant was brought to the grocery store by a deputy within three hours of the armed robbery he was not sure defendant was the man who had robbed him. Defendant's coat was brown, and only when Boswell saw the yellow buttons did he identify the coat as being the one worn by the person committing the armed robbery. Boswell stated that he was sure defendant was the one when he saw defendant's irregular teeth and defendant's gold earbob. Defendant's wallet

contained $56 which, according to Boswell, was the amount taken in the armed robbery.

Defendant took the witness stand and offered evidence tending to show that he was riding in an automobile with two other men on 15 December 1976; that he asked to be let out of the car because the driver was drinking alcoholic beverages; that he started walking toward his brother's home; and that he was picked up by a deputy sheriff. He went voluntarily to Boswell's grocery store. Defendant testified that he did not own a pistol and that he had not been in Boswell's grocery store on 15 December 1976. He explained that the money in his possession was money he had earned the previous week at a tobacco factory.

From a jury verdict of guilty of armed robbery and a sentence of not less than 20 years nor more than 25 years in prison, defendant appeals.

*Attorney General Edmisten, by Associate Attorney Henry H. Burgwyn, for the State.*

*Farris, Thomas & Farris, by Robert A. Farris, for defendant appellant.*

ARNOLD, Judge.

[1]  Defendant contends that the trial court committed reversible error by allowing the State's witness, Carl Boswell, to make an in-court identification of defendant. He argues that the pretrial identification procedure in which defendant was shown singly to Boswell was so suggestive as to lead to a tainted identification. We cannot agree.

Although the practice of showing suspects singly for identification purposes has been recognized as suggestive and has been widely condemned, whether such confrontation violates due process depends upon the totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972); *State v. Lankford*, 28 N.C. App. 521, 221 S.E. 2d 913 (1976). In *Neil v. Biggers, supra,* the United States Supreme Court listed some factors which should be considered in determining whether the "totality of the circumstances" indicates the identification was reliable. These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness's description of the

criminal, the amount of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

In the present case the record discloses that the armed robbery took place in a small grocery store lit by three naked, seventy-five watt light bulbs, and that witness Boswell was, at one point, as close as five or six feet from defendant. Boswell testified that the defendant was in the store for about eight, ten, or twelve minutes. Defendant points out that the witness failed to describe correctly the color of the jacket worn by the robber and that Boswell did not describe defendant as having a mustache. We do not believe, however, that a witness must be able to describe with perfect accuracy a person he observes in the process of committing a crime. The description given by Boswell, his apparently earnest and independent efforts to identify the proper person, his certainty once he saw defendant's teeth and defendant's earbob, and the short interval of time between the crime and the confrontation, are all factors tending to show that under the totality of the circumstances the identification was reliable. We, therefore, find no error in the trial court's conclusions and its admission of the in-court identification. *State v. Lankford, supra.*

[2] Defendant's second assignment of error is that the trial court erred in admitting corroborative hearsay evidence of State's witness T. M. Owens concerning Boswell's description of the armed robber. Defendant argues that there was no evidence that Boswell, whose testimony Owens was corroborating, ever talked to Owens. The record, however, shows that Boswell talked to four or five deputies concerning the description of the robber; he stated at one point that Owens arrived shortly after deputy sheriff Gay, that he did not believe Owens wrote down the description, but that Gay did. We think this was sufficient evidence from which to infer that Boswell talked to Owens. Hence, such evidence was corroborative and was properly admitted.

[3] The final assignment of error which we consider is defendant's argument that the trial court erred in denying defendant's motion for mistrial after the prosecutor cross-examined defendant concerning past criminal acts. According to the record, defendant denied, in response to the prosecutor's question, that he had ever been convicted of any criminal offense other than

traffic offenses. The prosecutor then asked defendant whether he had escaped from the North Carolina prison system on 21 May 1971. Defendant's objection was sustained, but defendant argues that the prosecutor acted in bad faith by asking the question, and that prejudicial error resulted.

Our courts have consistently held that once a defendant elects to testify in his own behalf he subjects himself to impeachment by questions relating to past criminal acts. *See, e.g. State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537, vacated and remanded on other grounds *sub nom McKenna v. North Carolina*, --- U.S. ---, 50 L.Ed. 2d 278, 97 S.Ct. 301 (1976). Of course, the prosecutor who asks such questions must do so in good faith, but where the record shows no bad faith on the part of the prosecutor the judge's allowing such questions is presumed correct. *State v. Gaiten*, 277 N.C. 236, 176 S.E. 2d 778 (1970).

In the case at bar, the court sustained defendant's objection to the question. Defendant has shown no bad faith on the part of the prosecutor and we, therefore, find no error in the question prejudicial to defendant.

Defendant's other assignments of error have been reviewed by this Court and no error has been found.

No error.

Judges MORRIS and HEDRICK concur.