STATE OF NORTH CAROLINA v. ULYSEES PERRY

No. 808SC1038

(Filed 19 May 1981)

**1. Criminal Law § 101 — witness threatened — no mistrial**

The trial court did not err in denying defendant's motion for a mistrial made on the ground that events at trial caused the jury to conclude that defendant was somehow responsible for an attempt to intimidate or tamper with a witness, since there was no indication before the jury of any impropriety on defendant's part; testimony which was the same as or similar to that objected to by defendant had already been admitted on cross-examination pursuant to questions by defendant's own counsel; and defendant declined the opportunity to request any instructions he desired regarding the matter.

**2. Larceny § 7 — heaters taken from church — testimony of one trustee — sufficiency of evidence**

In a prosecution of defendant for larceny, there was no merit to his contention that the State failed to show that heaters were taken from a church without permission because the State presented only one of the three trustees who constituted the ruling body of the church and were in charge of church property, since the State's failure to call the other two trustees went to the weight and not to the sufficiency of the evidence.

**3. Criminal Law § 111 — jury instruction — presumption of innocence — defendant's contentions — lack of evidence**

There was no merit to defendant's arguments that (1) the trial court erred by failing to instruct that the presumption of innocence remains with a defendant "until that moment that the twelve agree on the verdict of guilty and for not one moment less," since the court did instruct on the presumption of the defendant's innocence and if defendant desired elaboration, he should have requested it; (2) the trial court erred in stating defendant's contentions, since defendant did not object at trial to the statement of his contentions and there was no gross misstatement by the trial court; and (3) the court failed to explain that the lack of evidence could be just as important as the existence of evidence, since the court had instructed that the State must prove defendant

State v. Perry

guilty beyond a reasonable doubt and that a reasonable doubt could arise "out of the evidence or the lack of evidence or some deficiency in it."

4. **Larceny § 9— acquittal on breaking and entering charge—absence of charge on value of stolen property—felonious larceny conviction improper**

   Where the jury returned a verdict of not guilty of felonious breaking or entering and guilty of felonious larceny, the conviction of felonious larceny should be vacated and the case should be remanded for entry of a sentence consistent with a verdict of guilty of misdemeanor larceny, since the larceny count of the indictment stated the value of the stolen property as $750; the evidence, however, tended to show that the three stolen heaters were worth only $75 each; and the trial court did not instruct the jury to fix the value of the stolen property and did not submit an issue of misdemeanor larceny.

5. **Criminal Law § 26; Larceny § 1— conviction of larceny and possession of stolen property—double jeopardy**

   Defendant could not be convicted both of the larceny of property and of the possession of the same stolen property which was the subject of the larceny. G.S. 14-71.1; G.S. 14-72(a).

   Judge MARTIN (Robert M.) dissenting.

APPEAL by defendant from *Small, Judge.* Judgment entered 3 July 1980 in Superior Court, WAYNE County. Heard in the Court of Appeals 11 March 1981.

Defendant was tried for breaking or entering with intent to commit larceny; larceny following a breaking or entering of goods valued at $750; and possession of stolen property.

Reverend Willard Carlton testified for the State that he was assistant pastor of Moye Memorial Free Will Baptist Church in Goldsboro; that he conducted services on the second and fourth Sundays of each month; and that Reverend J. H. Moore conducted services on the first and third Sundays of each month. He testified that he was the last person to leave the church on 11 May 1980, and that he locked the doors upon leaving. When he next returned to the church on 19 May 1980, a Monday, he noticed that the front door was open and the latches on it were "busted." Three gas heaters which had been in the church on 11 May were missing. Subsequently, on 26 May 1980, he saw two of the heaters at Williams Used Furniture Store. Woodrow Williams testified for the State that he operated this store and that he bought the two heaters from defendant for $35 on the morning of 16 May 1980. Williams testified that in his opinion the fair market value of the heaters was $75 each. Finally, Mildred Carlton, Reverend Carlton's wife, testified for the State that she was a

trustee of Moye Memorial Free Will Baptist Church in May 1980 and that she did not authorize defendant or anyone else to remove the heaters from the church.

Defendant was acquitted of the breaking or entering charge but was convicted of both felonious larceny and felonious possession of stolen property. From a judgment of imprisonment, he appeals.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*John W. Dees for defendant appellant.*

WHICHARD, Judge.

[1] Defendant's first assignment of error relates to the denial of his motion for a mistrial. During cross-examination the witness Woodrow Williams testified, without objection: "As to whether anybody has ever threatened me with prosecution in this case, I have been threatened today. As to whether anybody ever threatened to bring charges against me for receiving stolen property, no they have not." The district attorney subsequently asked Williams on redirect: "Mr. Williams, you stated on cross examination you had been threatened?" The witness answered: "I have." Defense counsel's objection was then sustained. No motion to strike the answer was made, however. A voir dire hearing was conducted during which Williams stated that a woman in the courtroom had told him, about half an hour earlier, "You are going to die tonight." The woman was identified by Williams and was taken into custody. Defense counsel denied any involvement by the defendant and moved for a mistrial. The motion was denied. The trial court offered to instruct the jury to disregard any question (presumably including defendant's own questions on cross-examination) relative to whether the witness had been threatened in any way. The court stated: "I will give you the option of requesting instructions as to whether or not they should disregard those questions and any testimony relative to it." The defendant declined to request any instructions, however.

Defendant now argues that a mistrial should have been allowed, because the events at trial "inevitably caused the jury to conclude that the defendant was somehow responsible for an attempt to intimidate or tamper with a witness." We disagree. "A mistrial

is appropriate only for serious improprieties which render impossible a fair and impartial verdict under law." *State v. Chapman*, 294 N.C. 407, 417-418, 241 S.E. 2d 667, 674 (1978). "[A] motion for mistrial in cases less than capital is addressed to the trial judge's sound discretion, and his ruling thereon (without findings of fact) is not reviewable without a showing of gross abuse of discretion." *State v. Daye*, 281 N.C. 592, 596, 189 S.E. 2d 481, 483 (1972). In this case there was no indication before the jury of any impropriety on defendant's part. The same or similar testimony had already been admitted on cross-examination pursuant to questions by defendant's own counsel. Further, defendant declined the opportunity to request any instructions he desired regarding the matter; and it is thus difficult for him to show any prejudice deriving therefrom. Defendant's first assignment of error is overruled.

[2] Defendant next contends the evidence was insufficient to convict as a matter of law. He argues that the State failed to show that the heaters were taken without permission since it presented only one of the three trustees who constituted the ruling body of the church and were in charge of church property. The testimony of trustee Mildred Carlton was, however, sufficient evidence to permit the jury to find that the heaters were taken without consent. The State's failure to call the other trustees went to the weight, not the sufficiency, of the evidence. Defendant also argues that although the State's evidence tended to show that the church would normally have been used for services on 18 May 1980, following sale of the heaters to Williams on 16 May 1980, there was nonetheless no evidence of a break-in at the church until 19 May 1980. He contends that the evidence thus tended to show that the heaters were not taken pursuant to a breaking and entering. Since defendant was acquitted of breaking or entering and since the felonious larceny verdict must be vacated as hereinafter discussed, however, the absence of evidence that the break-in occurred prior to 19 May 1980 cannot have prejudiced defendant.

[3] Defendant has brought forward three assignments of error dealing with the court's instructions to the jury. First, he excepts to the following instruction:

> Now, under our system of justice when a defendant pleads not guilty he is not required to prove his innocence.

> The defendant is presumed to be innocent. This presumption goes with him throughout the trial and until the state proves to you that the defendant is guilty beyond a reasonable doubt.

Defendant argues that the court erred by failing to instruct that the presumption of innocence remains with a defendant "until that moment that the twelve agree on the verdict of guilty and for not one moment less." "[T]he court did clearly instruct the jury that defendant was presumed to be innocent and that the burden was on the State to prove him guilty beyond a reasonable doubt." *State v. Geer*, 23 N.C. App. 694, 695-696, 209 S.E. 2d 501, 502 (1974). If defendant desired elaboration, he should have requested it. *State v. Tipton*, 8 N.C. App. 53, 173 S.E. 2d 527 (1970). Second, defendant excepts to the court's statement of his contentions. "A misstatement of the contentions of the parties must be brought to the court's attention in apt time to afford opportunity for correction in order for an exception thereto to be considered on appeal, unless the misstatement was so gross that no objection at the trial was necessary." *State v. Lankford*, 28 N.C. App. 521, 526, 221 S.E. 2d 913, 916 (1976). Defendant did not object below to the statement of his contentions, and we find no "gross" misstatement of his contentions in the instructions given. Third, defendant excepts to that portion of the instructions in which the court admonished the jury that all of the evidence was important, and that the jury should remember and consider all of the evidence. He contends the court failed to explain that "the lack of evidence . . . can be just as important as the existence of evidence." The court had instructed, however, that the State must prove defendant guilty beyond a reasonable doubt and that a reasonable doubt could arise "out of the evidence *or the lack of evidence or some deficiency in it.*" (Emphasis supplied.) In view of this instruction, we find no error prejudicial to defendant in the court's failure to refer further to the lack of evidence in the portion of the instructions complained of.

[4]   Defendant correctly contends the felonious larceny conviction is inconsistent with the acquittal as to breaking or entering.

> Our courts have repeatedly held that where a defendant is tried for breaking or entering and felonious larceny and the jury returns a verdict of not guilty of felonious breaking or entering and guilty of felonious larceny, it is improper for

the trial judge to accept the verdict of guilty of felonious larceny unless the jury has been instructed as to its duty to fix the value of the property stolen; the jury having to find that the value of the property taken exceeds $200.00 for the larceny to be felonious.

*State v. Keeter*, 35 N.C. App. 574, 575, 241 S.E. 2d 708, 709 (1978), and cases cited. G.S. 14-72 was amended, effective 1 January 1980, to increase from $200 to $400 the value which stolen property must exceed in order to constitute a felony. 1979 Sess. Laws, ch. 408. The $400 figure is applicable here, since the larceny charged occurred in May 1980. The larceny count of the indictment stated the value of the stolen property as $750; however, the evidence tended to show that the heaters were worth only $75 each. The court did not instruct the jury to fix the value of the stolen property and did not submit an issue of misdemeanor larceny. The felonious larceny conviction must therefore be vacated, and the case must be remanded for entry of a sentence consistent with a verdict of guilty of misdemeanor larceny. *Keeter*, 35 N.C. App. 574, 241 S.E. 2d 708; *see also State v. Cornell*, 51 N.C. App. 108, 275 S.E. 2d 857 (1981).

[5]   Absent our holding with regard to defendant's final contention, the failure to instruct the jury to fix the value of the stolen property and to submit an issue of misdemeanor *possession* would likewise require vacating the felony *possession* conviction and remanding for entry of a sentence consistent with a verdict of misdemeanor possession pursuant to G.S. 14-72(a). Our holding with regard to defendant's final contention, however, requires remand for entry of a judgment of dismissal. Defendant finally contends that "[p]ossession of stolen property is an element of larceny [and] [t]hus both convictions cannot be sustained." This contention presents the question of whether the defendant can be convicted both of the larceny of property and of the possession of the same stolen property which was the subject of the larceny. We hold that he cannot.

We so hold, first, because "[i]t is our authority and duty . . . to apply a valid statute so as to give it the meaning and effect intended by the Legislature at the time of its enactment," *State v. Williams* 286 N.C. 422, 430, 212 S.E. 2d 113, 119 (1975); and we do not ascribe to the General Assembly, in its creation of the possession offense, the intent to effect such exposure to dual

punishment for the same offense. The 1977 General Assembly amended G.S. 14-72(a) by inserting the words "or the possessing of stolen goods knowing them to be stolen," thereby creating the offense of misdemeanor possession of stolen goods. 1977 N.C. Sess. Laws ch. 978 § 2. It also enacted G.S. 14-71.1, creating the offense of felony possession of stolen goods. 1977 N.C. Sess. Laws ch. 978 § 1. We ascribe to both enactments the legislative purpose set forth with regard to G.S. 14-71.1 in *State v. Kelly*, 39 N.C. App. 246, 249 S.E. 2d 832 (1978), *viz.*, "to provide protection for society in those incidents where the State does not have sufficient evidence to prove who committed the larceny, or the elements of receiving." 39 N.C. App. at 248, 249 S.E. 2d at 833. As the court there noted, "[t]his could occur where the State has no evidence as to who committed the larceny and has, by the passage of time, lost the probative benefit of the doctrine of possession of recently stolen property." *Id.* The apparent intent was to provide for the State a position to which to recede when it cannot establish the elements of breaking and entering or larceny but can effect proof of possession of the stolen goods. It would constitute a purposeless parsing of the single act of theft to extract from the larceny violation a distinct offense of possession of the very stolen goods which were the subject of the larceny. The presumed purpose of such extraction, enhanced punishment for the offender, could be achieved by the far simpler expedient of merely augmenting the penalty for the larceny itself. Further, because the knowledgeable rogue would then have reason promptly to pass the fruits of his thievery to another for the purpose of attempting to avert at least one of two potential convictions deriving from his single larcenous act, the effect of a contrary interpretation could well be the involvement of multiple defendants in what might otherwise be the criminality of a single offender. We decline to impute to the General Assembly in the enactment of the possession offense the improbable intent which the foregoing considerations suggest.

We so hold, second, because as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, it is the duty of the court to adopt the interpretation which will save the act. *In re Dairy Farms*, 289 N.C. 456, 223 S.E. 2d 323 (1976). "Even to avoid a serious doubt the rule is the same." *Dairy Farms*, 289 N.C. at 465, 223 S.E. 2d

at 329 *quoting from National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1936). While "the decisional law in the area [of the double jeopardy clause of the fifth amendment of the United States Constitution] is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator," *Albernaz v. United States*, --- U.S. --- , --- , 67 L.Ed. 2d 275, 284, 101 S.Ct. 1137, 1144-1145 (1981), we have at minimum "serious doubt" that a contrary interpretation of the possession statute could survive the fifth amendment double jeopardy clause protection "against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L.Ed. 2d 656, 665, 89 S.Ct. 2072, 2076 (1969).

The double jeopardy clause of the fifth amendment is applicable to the states through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 23 L.Ed. 2d 707, 89 S.Ct. 2056 (1969); *see also North Carolina v. Pearce*, 395 U.S. 711, 23 L.Ed. 2d 656, 89 S.Ct. 2072 (1969). The Court in *Benton* stated: "[T]he double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and . . . it should apply to the States through the Fourteenth Amendment." 395 U.S. at 794, 23 L.Ed. 2d at 716, 89 S.Ct. at 2062. The validity of defendant's dual convictions thus "must be judged . . . under [the United States Supreme] Court's interpretations of the Fifth Amendment double jeopardy provision." *Benton*, 395 U.S. at 796, 23 L.Ed. 2d at 717, 89 S.Ct. at 2063.

The standard established by that Court for determining the validity of convictions under the double jeopardy clause is as follows:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, 55 L.Ed. 489, 490, 31 S.Ct. 421, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusettes in *Morey v. Com. 108 Mass. 433*: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction

under either statute does not exempt the defendant from prosecution and punishment under the other.

*Blockburger v. United States*, 284 U.S. 299, 304, 76 L.Ed. 306, 309, 52 S.Ct. 180, 182 (1932). "If each [offense] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 43 L.Ed. 2d 616, 627, 95 S.Ct. 1284, 1294 (1975). We consider the offenses here in the light of this standard.

Larceny, the first offense of which defendant was convicted, is a common law crime which consists of

the . . . taking and carrying away from any place at any time of the personal property of another, without the consent of the owner, with the . . . intent to deprive the owner of his property permanently and to convert it to the use of the taker or to some other person than the owner.

*State v. Booker*, 250 N.C. 272, 273, 108 S.E. 2d 426, 427 (1959). Possession of stolen goods, the second offense of which defendant was convicted, is a statutory crime. G.S. 14-72(a) provides:

Except as provided in subsections (b) and (c) below, . . . the possessing of stolen goods knowing them to be stolen, of the value of not more than four hundred dollars ($400.00) is a misdemeanor punishable under G.S. 14-3(a).[1]

To establish the offense of larceny, then, the State must show that defendant took and carried away the goods of another with the intent to deprive the owner thereof permanently. To establish the offense of possession of stolen property the State must show that defendant possessed the goods of another knowing them to have been stolen.[2] Evidence establishing commission

---

1. G.S. 14-72(a) is the applicable statute here because, as noted above, only a conviction of misdemeanor possession could be sustained under the facts of this case.

   G.S. 14-72(c) and G.S. 14-71.1 relate to felony possession. The double jeopardy clause would appear equally applicable whether the possession was of the felony or misdemeanor variety.

2. G.S. 14-72(a). The felony possession section of this statute adds "or having reasonable grounds to believe them to be stolen." G.S. 14-72(c). The other felony possession statute contains a similar phrase: "or having reasonable grounds to believe the same to have been feloniously stolen or taken." G.S. 14-71.1.

of the offense of larceny necessarily also establishes commission of the offense of possession of the stolen property which was the subject of the larceny. It is impossible to take and carry away the goods of another without in the process possessing those goods with knowledge that they are stolen. There are no facts to be proven in establishing possession of stolen goods which are not also proven in establishing the larceny of those goods. The prosecutor who has made out a case of larceny *ipso facto* has also made out a case of possession of the stolen goods which were the subject of the larceny. "[I]t is clearly *not* the case that 'each [statute] requires proof of a fact which the other does not.'" *Brown v. Ohio*, 432 U.S. 161, 168, 53 L.Ed. 2d 187, 195, 97 S.Ct. 2221, 2226 (1977) (emphasis in original).

In *Harris v. Oklahoma*, 433 U.S. 682, 53 L.Ed. 2d 1054, 97 S.Ct. 2912 (1977), defendant had been convicted of felony murder arising from an armed robbery. He was subsequently convicted on a separate information charging the underlying offense of robbery with firearms, the trial court having rejected his claim that the second prosecution violated the double jeopardy clause of the fifth amendment. The United States Supreme Court reversed, stating:

> When as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one. [Citations omitted.] ". . . [*A*] *person* [*who*] *has been tried and convicted for a crime which has various incidents included in it, . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense.*" [Citations omitted.]

*Harris*, 433 U.S. at 682-683, 53 L.Ed. 2d at 1056, 97 S.Ct. at 2913 (emphasis supplied).[3]

It can be argued that a defendant is guilty of both larceny and possession of the stolen property which was the subject of

---

3. For other recent United States Supreme Court decisions in the double jeopardy area, see *Albernaz v. United States*, --- U.S. --- , 67 L.Ed. 2d 275, 101 S.Ct. 1137 (1981); *Illinois v. Vitale*, 447 U.S. 410, 65 L.Ed. 2d 228, 100 S.Ct. 2260 (1980); and *Whalen v. United States*, 445 U.S. 684, 63 L.Ed. 2d 715, 100 S.Ct. 1432 (1980).

the larceny on the theory that the act of larceny terminates at the latest when defendant leaves the victim's premises, and that thereafter he is committing the distinct offense of possession of the stolen property.[4] Absent clearly expressed legislative intent to that effect, the decision of the United States Supreme Court in *Brown v. Ohio* deprives this argument of viability. The defendant in *Brown* had been convicted under Ohio law of the offenses of joyriding (taking or operating a vehicle without the owner's consent) and auto theft (joyriding with the intent permanently to deprive the owner of possession). The Ohio Court of Appeals held that the two offenses constituted the same statutory offense within the meaning of the double jeopardy clause. It further held, however, that the defendant could be convicted of both crimes because "[t]he two prosecutions [were] based on two separate acts . . . which occurred [nine days apart]." *Brown*, 432 U.S. at 164, 53 L.Ed. 2d at 193, 97 S.Ct. at 2224. The United States Supreme Court reversed, stating:

> The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units. [Citation omitted.] The applicable Ohio statutes . . . make the theft and operation of a single car a single offense. . . . Accordingly, the specification of different dates in the two charges on which [defendant] was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments.

*Brown*, 432 U.S. at 169-170, 53 L.Ed. 2d at 196-197, 97 S.Ct. at 2227.

The facts here would seem to invoke the *Brown* result, even more so than those in *Brown*. If the double jeopardy clause precludes conviction for both theft of a vehicle and joyriding nine days later in the stolen vehicle, by the same reasoning it precludes conviction for both larceny of property and the uninterrupted possession at some later time of the stolen property which was the subject of the larceny. There is no evidence in the record here tending in any way to establish that the possession

4. See *State v. Andrews*, 52 N.C. App. 26, 277 S.E. 2d 857 (1981).

count resulted from a reacquisition by defendant of the stolen property subsequent to relinquishment of possession. The question of applicability of the double jeopardy clause where a defendant relinquishes possession of the stolen property which was the subject of the larceny, and thereafter reacquires it, is thus not before us.

"The proper remedy for convictions on both greater and lesser offenses is to vacate both the conviction and the sentence of the lesser-included offense." *United States v. Michel*, 588 F. 2d 986, 1001 (5th Cir.) *cert. denied* 444 U.S. 825 (1979); *see also Williams v. Indiana*, 383 N.E. 2d 416 (Ind. App. 1978). Accordingly, the possession of stolen property judgment must be vacated, and the case must be remanded for entry of a judgment of dismissal.

The result is

As to the felonious larceny conviction, the judgment is vacated, and the case is remanded to the trial court for entry of a judgment as upon a verdict of guilty of misdemeanor larceny.

As to the possession of stolen property conviction, the judgment is vacated, and the case is remanded to the trial court for entry of a judgment of dismissal.

Chief Judge MORRIS concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.) dissenting.

I believe that the law stated in the opinion of Martin (Harry C.), J., in *State v. Andrews*, 52 N.C. App. 26, 277 S.E. 2d 857 (1981) governs the question of former jeopardy raised on this appeal.